IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

FRANKLIN KEITH PREWITT                                                      PLAINTIFF

    vs.                      Civil No. 05-3017

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                      DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

Franklin Keith Prewitt (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his claim for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

Plaintiff's complaint was filed on March 31, 2005 (Doc. #1). The Commissioner filed her appeal brief on August 22, 2005 (Doc. #8). Despite ample time to do so, the Plaintiff has not submitted an appeal brief for consideration by the undersigned. The history of the administrative proceedings is contained in the Commissioner's appeal brief (Doc. #8, pp. 1-2), and will not be recited herein, except as is necessary.

The DIB application now before the undersigned was filed on February 24, 2003, and alleged an onset date of January 1, 1998 (T. 114-116, 117). The relevant time period for Plaintiff's claim for DIB benefits begins with the alleged onset date, January 1, 1998, and ends with Plaintiff's

AO72A
(Rev. 8/82)

date last insured for purposes of DIB benefits, September 30, 2002 (T. 114, 117, 82).

Plaintiff alleges that he is disabled due to: thrombosis phlebitis (embolism) in left lower extremity; neurological problems; history of removal of kneecap; loss of strength; pain in hips, toes, right foot, fingers, hands, shoulder, neck, and left knee; history of injury in motor vehicle accidents and parachute accident; cervical stenosis with radiculopathy; herniated nucleus pulposis at C5-6; osteoarthritis; degenerative joint disease; medication side effects; bipolar disorder; depression; history of suicidal tendencies; Hepatitis C with resulting liver damage; anti-social personality disorder; history of orthoscopic knee surgery; difficulty sleeping; paranoia; delusional thinking; GERD; schizophrenia; ganglion cysts; edema; migraine headaches; nausea; and, muscle spasms. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

Plaintiff, whose date of birth is February 8, 1961, was 43 years of age at the time of the May 26, 2004 administrative hearing (T. 198, 898, 893). Plaintiff has the equivalent of a high school education (T. 898, 145). Plaintiff previously worked as a carpenter and construction worker/ supervisor (T. 81, 124-129).

The Social Security Administration denied plaintiff's application initially and on reconsideration. Plaintiff then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was conducted on May 26, 2004 (T. 893-939). The ALJ rendered an unfavorable decision on September 8, 2004 (T. 72-83). Plaintiff then sought the review of the Appeals Council on September 28, 2004 (T. 66a, 66b, 68). On November 3, 2004, Plaintiff's counsel provided the Appeals Council with "53 pages of medical reports from the VA

Hospital in Little Rock dated October 5, 2004[1]" (T. 6, 7-66). Although the Appeals Council did not expressly state that the additional evidence was considered, the additional evidence submitted by Plaintiff's counsel is included in the administrative record before the undersigned. Therefore, the undersigned will assume that the additional evidence was considered by the Appeals Council. Plaintiff's request for review was denied by the Appeals Council on February 24, 2005 (T. 3-5), thus making the ALJ's decision the final decision of the Commissioner. On March 31, 2005, Plaintiff initiated proceedings seeking judicial review of the final decision of the Commissioner (Doc. #1). The matter is before the undersigned by consent of the parties (Doc. #5).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000)*. Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999)*. In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.*

However, the Court may not reverse the Commissioner's decision merely because

---

[1] Although the date October 5, 2004, appears at the top of each page of the additional medical records submitted by Plaintiff's counsel, a thorough review of the records reveals that the additional medical records submitted actually represent treatment at the VA beginning in March of 2004 and ending in August of 2004 (T. 7-66).

-3-

substantial evidence would have supported an opposite decision. *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)*. Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992)*. And, it is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir.1992)*.

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work

experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*.

Even if an individual is determined to be disabled at step five of the sequential analysis, he will not be considered to be disabled if alcoholism or drug addiction is a contributing factor material to the determination of disability. *See* 42 U.S.C. § 423(d)(2)(c). The key factor in determining if drug addiction or alcoholism is material is if the individual would not be found disabled if alcohol or drug use were to cease. This depends on what mental or physical limitations would remain if the claimant stopped using drugs or alcohol and whether the remaining limitations would be disabling. *See* 20 C.F.R. §§ 404.1535; *Jackson v. Apfel,* 162 F.3d 533, 537 (8th Cir. 1998); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000). The plaintiff has the initial burden of showing that alcoholism or drug addiction is not material to the finding of disability. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council. See *Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir.1999) (citing Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994))*. Thus, in situations such as the present, this court's role is to

-5-

determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the ALJ's determination was made." *Riley v. Shalala, 18 F.3d at 622.* In practice, this requires a decision as to how the ALJ would have weighed the new evidence had it existed at the initial hearing. *See id.* As the United States Court of Appeals for the Eighth Circuit has often noted, "this [is] a peculiar task for a reviewing court." *Id.* Critically, however, this court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision. *See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993).* This requires us to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. *Flynn v. Chater, 107 F.3d 617, 622 (8th Cir.1997).* Thus, we have endeavored to perform this function with respect to the newly submitted evidence. *Id.; Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995).*

**Discussion:**

Plaintiff's complaint was filed of record on March 31, 2005 (Doc. #1). The Commissioner filed an answer and transcript on June 15, 2005 (Doc. #7). The Commissioner then filed an appeal brief on August 22, 2005 (Doc. #8). Although there has been ample time for Plaintiff's counsel to submit a brief to this court, he has not done so. Therefore, the Court was presented with no argument in support of Plaintiff's request for reversal of the Commissioner's decision. Nonetheless, as always, the Court has thoroughly reviewed the administrative record in the course of conducting this judicial review.

Plaintiff bears the burden of proving disability. *Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995).* While the absence of an objective medical basis supporting the *severity* of subjective complaints is just one factor to be considered in evaluating the credibility of testimony and

AO72A
(Rev. 8/82)

complaints, *e.g., Herbert v. Heckler, 783 F.2d 128, 130 (8th Cir.1986),* the *existence* of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir.1992).* Thus, plaintiff had to establish a physical or mental impairment by medical evidence consisting of signs, symptoms and laboratory findings, rather than only by his statements of his symptoms. *See 20 C.F.R. § 404.1508.* An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. *Brown v. Shalala, 15 F.3d 97, 98 (8th Cir.1994).*

Here, the ALJ determined that the Plaintiff is insured for purposes of DIB benefits through September 30, 2002, and has not engaged in substantial gainful activity since the alleged onset date of disability (T. 82). At steps two and three, the ALJ found that Plaintiff suffered from osteoarthritis and mood disorders which are severe, but does not meet or medically equal a listed impairment (T. 82). At the fourth step, the ALJ ruled that the Plaintiff's residual functional capacity[2] prevented him from returning to his past relevant work as a construction worker with supervisory duties (T. 80-82).

With respect to the required PRT analysis, the ALJ found that "absent his chronic drug and/or alcohol abuse, the claimant's mental impairments have resulted in only mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace and that he has experienced no

---

[2]The ALJ determined that absent his chronic drug and/or alcohol abuse, Plaintiff retained the residual functional capacity to perform a significant range of light work (lifting up to 10 pounds frequently and 20 pounds occasionally, push/pull 10 pounds frequently and 20 pounds occasionally, stand and/or walk for a total of 6 hours of an 8 hour workday, with moderate limitations in social functioning, performing unskilled work where interpersonal contact is incidental to the work performed) (T. 80, 82).

episodes of decompensation of extended duration" (T. 80).

Using Medical-Vocational Guidelines Rules 202.20, 202.21 and 201.00(h), as a framework, the ALJ found that based upon Plaintiff's age, education, and past relevant work experience, the Plaintiff is not capable of making a successful adjustment to work that exists in significant numbers in the national economy, and thus would be found "disabled" (T. 80-83). However, the ALJ then determined that Plaintiff's chronic drug and/or alcohol abuse is material to the finding of Plaintiff being "disabled". The ALJ found that absent his chronic drug and/or alcohol abuse, the claimant could perform the demands of a significant range of light work on a sustained basis. Hence, the ALJ's final determination was that Plaintiff was "not disabled" (T. 83).

Since no appeal brief or argument has been submitted to the undersigned on behalf of the Plaintiff, the undersigned can only surmise that Plaintiff does not object to the majority of the ALJ's findings. With the exception of the final finding with respect to the Plaintiff's drug and/or alcohol abuse being a material, contributing factor to the finding that plaintiff was disabled, the Plaintiff would have prevailed. Had the ALJ's analysis stopped at step five of the sequential analysis, absent the ALJ's finding that plaintiff's drug and/or alcohol abuse was a material, contributing factor, Plaintiff would have been granted benefits and this appeal would not be pending before the undersigned. Therefore, without benefit of argument on behalf of Plaintiff, the ALJ's finding with respect to Plaintiff's abuse of drugs and/or alcohol is the issue to which the undersigned will devote particular attention upon review.

The record is replete with evidence of Plaintiff's of abuse of drugs and/or alcohol. While hospitalized at the VA Hospital in February of 2003, Plaintiff tested positive for cocaine and marijuana (T. 214, 215). Plaintiff's treating physicians note Plaintiff's abuse of drugs and alcohol

-8-

AO72A
(Rev. 8/82)

in the his treatment records (T. 231). By Plaintiff's own report, he has been in long-term, inpatient substance abuse treatment programs, both voluntarily and involuntarily (T. 250). Plaintiff also simply failed to keep a number of his scheduled appointments (T. 722). The administrative record also establishes Plaintiff's inconsistent reports with respect to his use of drugs and alcohol.

During the consultative mental evaluation performed by Dr. Nancy J. Toombs, a licensed psychologist, Plaintiff acknowledged using illicit drugs, including intravenously[3], such as marijuana, cocaine, LSD, heroin, and methamphetamine (T. 251, 243). Dr. Toombs expressed her concerns about the large does of opiates, namely Oxycodone (T. 254, 284, 216, 222, 225, 228, 281, 284, 581, 665, 670, 710, 717), used by the Plaintiff (T. 252). Plaintiff's medical records also reveal his daily use of alcohol, despite his history of treatment (T. 277, )   The medical records indicate that despite the positive test results for drugs and/or alcohol, at times Plaintiff merely alleges that he has a "history of substance abuse" (T. 231, 584).

On March 4, 2003, Plaintiff admitted that he smoked cocaine on his birthday in February of 2003 (T. 302). While this explanation was provided for the positive drug screen, Plaintiff professed that he was "clean from that standpoint otherwise", but he "does use [marijuana] regularly" (T. 302). Plaintiff alleges that he uses the marijuana to treat his pain. Therefore, he made it clear that he did not plan to stop smoking marijuana (T. 302).

On March 19, 2003, Dr. Catherine Netchvolodoff of the VA noted that Plaintiff "needs to quit smoking both regular cigarettes and Marijuana" due to his diagnoses of migratory

---

[3]While Plaintiff admitted to IV drug use to Dr. Toombs on March 18, 2003, he specifically denied ever engaging in IV drug use on on May 28, 2003, while being treated at the VA (T. 284). However, on that date, Plaintiff did admit to smoking cocaine "once on his birthday" (T. 284).

thrombophlebitis and probable Buerger's Disease (T. 295). On several occasions, Dr. Netchvolodoff noted that Plaintiff was not a candidate for the interferon treatment for his diagnosis of Hepatitis C, due to his continued use of marijuana and cocaine (T. 296, 300, 301, 302). Dr. Netchvolodoff noted that she "again talked to [patient regarding] stopping all [use of] tobacco and marijuana now!" (T. 296, 299).

On June 12, 2003, Plaintiff admitted that he injected street drugs and used intra nasal cocaine (T. 693). The record also reveals Plaintiff's drug seeking behavior during that same month. On June 29, 2002, despite the absence of any objective findings in support of his allegedly "exquisite pain", Plaintiff "demanded to have an injection of narcotics" yet, Dr. Matthew Jackson did not "feel like a narcotic would be the best treatment plan at the present time" (T. 203). Dr. Jackson noted the Plaintiff "basically was not going to be satisfied with anything else" (T. 203). In fact, Dr. Jackson's notes indicate the following:

> He once again asked me for a narcotic injection. When I refused that, he clenched his teeth and his fists, turned bright red and started growling and veins popped out of his head and neck. He said that he had better bite his tongue to avoid telling me what he thought of me.

(T. 203).

Rather than honoring Plaintiff's demands, Dr. Jackson gave Plaintiff samples of an anti-inflammatory medication, Vioxx, and suggested "elevation, heat, ice and other conservative measures" to treat Plaintiff's alleged pain (T. 203). Likewise, Plaintiff has a habit of failing to show up for his scheduled appointments (T. 214). Plaintiff tested positive for marijuana in February of 2003 (T. 303). However, Plaintiff reportedly denied using drugs and alcohol, which is a serious conflict with his positive drug and ethanol screen test results (T. 577). The record also reveals that

AO 72A
(Rev. 8/82)

Plaintiff was obtaining medications from the VA, but also from private practitioners at the same times (T. 729). "Drug seeking behavior" is noted in his medical records as early as 1997 (T. 742).

In July of 2002, Plaintiff sought treatment outside the VA system with Dr. Terry Sutterfield. He reported that Vioxx was giving him "great relief" (T. 719). Dr. Sutterfield noted "I really don't feel comfortable starting him on any narcotic in the evening at this point" (T. 719).

Yet, in late March and early April of 2004, Plaintiff's "cocaine relapse" and associated aural hallucinations caused him to be transferred to the Fayetteville, Arkansas VA Hospital from Harrison, Arkansas. Plaintiff was admitted on March 31, 2004, and was discharged on April 2, 2004, with the following diagnoses:

> Axis I: Cocaine Dependence - relapse in last 1.5 weeks, 2 grams/day
> Marijuana Dependence - 1/8 ounce per day
> Nicotine Dependence - 1 PPD
> Hx of Polysubstance Dependence
> Axis II: Antisocial personality disorder
> Axis III: Hepatitis C
> Restless Leg Syndrome
> DJD - Multiple Sites - for the last 25 years
> PPD status - none, last test was 3 years ago
> Exposure to Tuberculosis - non
> Hx of seizures - nne
> Hx of a few head injuries with LOC - in mid 1980s
> SERVICE CONNECTED % - 50; knee condition, traumatic arthritis, condition of the skeletal system
> Allergies: PENICILLIN, KEFLEX, ERYTHROMYCIN, ANTIBIOTICS
> Axis IV: isolation, homeless, unemployed
> Axis V: GAF - Year - 50; GAF - admission 35; GAF - Discharge 41

(T. 584). On March 31, 2004, Plaintiff reported simultaneous use of cocaine, marijuana, beer and Oxycodone to control his physical pain (T. 670).

During this hospitalization Plaintiff indicated that he: last used cocaine the day before his

admission; used marijuana and alcohol that week; and, used Methamphetamine 3 to 4 weeks prior to his admission. The purpose of this admission for plaintiff was detoxification. Following his discharge from detoxification, he was to return to the VA program in May of 2004 for further treatment and to attend intermediate group meetings during the month of April of 2004 (T. 585). During this admission, Plaintiff tested positive for cocaine and marijuana, but negative for ethanol (T. 587). Plaintiff's prognosis was considered "[p]oor, due to [his] non-compliance with any recommendations for his health, and his chronic substance abuse" (T. 588).

Plaintiff sought admission to the abstinence based VA program on April 7, 2004 (T. 594). On April 27, 2004, Plaintiff's social assessment was completed wherein he reported that his drug of choice is cocaine and he last used the substance on April 3, 2004 (T. 608). Plaintiff also reported that he used this drug three times per day for the previous three to six months (T. 608). His typical drinking/drugging pattern was "buy - use at motel until gone - repeat". Plaintiff indicated that stress led to his use of cocaine (T. 608). Plaintiff reported that he was able to maintain his sobriety from 1990 to 1997 (T. 608). Plaintiff took his first drink at the age of 7 and was first intoxicated at age 9 (T. 609). By his own admission, Plaintiff was drinking a 12 pack of beer every day, smoking a 1/8 ounce of marijuana daily and using 1/4 ounce of cocaine every day (T. 609). Plaintiff acknowledged that he experienced health problems as a result of his substance abuse (T. 610).

Despite his April 2004 treatment for drug and alcohol abuse, on April 15, 2004, Plaintiff reported to the orthopedic department of the VA that he did not have an alcohol problem (T. 623). He so reported on June 23, 2004, as well (T. 823). Additionally, despite his treatment for substance abuse in April of 2004, Plaintiff reported on June 1, 2004, that he continued to drink beer (T. 771). Indeed on April 30, 2004, Plaintiff reported to Dr. Netchvolodoff that "he doesn't have a drug

-12-

problem, he was just depressed and needed to be back on his depression meds" (T. 776). Yet, on July 1, 2004, Plaintiff attended the VA's outpatient substance abuse treatment program group meeting and identified "[him]self as being chemically dependant" (T. 819).

In May and June of 2004, plaintiff reported that he was drug and alcohol free (T. 832, 833, 830, 846, 850, 852). On June 3, 2004, Plaintiff's urine analysis drug and alcohol screening was negative (T. 837, 873-874).

On July 8, 2004, Dr. Claire Luell, a psychiatrist with the VA, completed a mental residual functional capacity questionnaire (T. 888-892). Dr. Luell treated Plaintiff on an inpatient and outpatient basis beginning March 31, 2004. She stated that Plaintiff's prognosis was fair, so long as Plaintiff refrained from substance abuse (T. 888). Dr. Luell noted that Plaintiff's "substance abuse and dependence complicates" his diagnosis of personality disorder with prominent antisocial traits (T. 892). A June 1, 2004, abdominal ultrasound revealed findings in Plaintiff's liver which were consistent with cirrhosis of the liver (T. 59).

The record also contains evidence that Plaintiff was engaged in physical activity which was inconsistent with his claim of disability. On June 29, 2002, Plaintiff reported to Dr. Matthew Jackson of the Boston Mountain Rural Health Center, Inc., that he was employed as a carpenter and had been *working a lot on a ladder* and as a result his ankles were more painful that week than they had been in the past (T. 728)(emphasis added). On July 15, 2004, Plaintiff stated that he "is doing well as far as [his shoulder] is concerned....[and he] is doing all things he needs to do, but does have to be careful with how long he *works*" (T. 813)(emphasis added).

The additional evidence of record was not available to the ALJ, but is not inconsistent with the ALJ's decision or the evidence before the ALJ. In May of 2004, Plaintiff reported that he did

AO72A
(Rev. 8/82)

not have an addiction to drugs (T. 23). He asserted that only used cocaine and marijuana because he was depressed and was off his antidepressant medication (T. 23). Despite contrary self reports made to the VA, on April 30, 2004, Plaintiff asserted that he has been a non-drinker of alcohol during the preceding 12 months (T. 25). However, On June 1, 2004, Plaintiff reported the following social history:

> Social history, he smokes about one pack of cigarettes a day, uses one to two marijuana cigarettes a day as well, but quit in April. Alcohol, about two to three beers over the weekends.

(T. 33).

Plaintiff did not appear for his April 13, 2004 appointment with the VA (T. 36). He also failed to report for his July 8, 2004 appointment (T. 36). Both appointments were for Plaintiff to be given and instructed on the use of a muscle simulator to treat his allegations of pain. However, when Plaintiff was contacted on July 13, 2004, about rescheduling the appointment, he requested an August 2004 appointment and declined the offer of an earlier appointment (T. 36).

As the ALJ correctly pointed out, an individual will not be considered to be disabled if alcoholism or drug addiction is a contributing factor material to the determination of disability. *See* 42 U.S.C. § 423(d)(2)(c). The key factor in determining if drug addiction or alcoholism is material is if the individual would not be found disabled if alcohol or drug use were to cease. This depends on what mental or physical limitations would remain if the claimant stopped using drugs or alcohol and whether the remaining limitations would be disabling. *See* 20 C.F.R. §§ 404.1535; *Jackson v. Apfel,* 162 F.3d 533, 537 (8th Cir. 1998); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000). The plaintiff has the initial burden of showing that alcoholism or drug addiction is not material to the finding of disability. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

-14-

In the present case, the ALJ found that plaintiff's drug and alcohol use was a contributing factor material to the determination of disability. In making this determination, the ALJ relied on plaintiff's medical records mentioned above. The records clearly reveal the plaintiff's abuse of drugs and alcohol remove him as a candidate for interferon treatment for his Hepatitis C. Likewise, he has a history of failing to keep scheduled appointments and postponing treatments at the VA. Plaintiff made conflicting reports to various portions of the VA with respect to his use of drugs and alcohol. Although Plaintiff claimed to be drug and alcohol free, he had positive drug screens. It is also apparent from the record that plaintiff's depression was more pronounced when he was using alcohol and drugs. In fact, plaintiff admitted that he had used drugs and alcohol to self-medicate his psychiatric and physical disorders. Plaintiff's objective medical tests reveal mild and borderline results, yet Plaintiff insists he is in excruciating pain, particularly when he engaged in drug-seeking behavior. Nothing in the additional evidence included in the administrative record (T. 7-66), is inconsistent with the ALJ's findings. If anything, the additional evidence further supports the ALJ's decision. Therefore, we conclude that substantial evidence supports the ALJ's determination that plaintiff's alcohol and drug abuse is a contributing factor material to the determination of his disability.

## Conclusion:

A thorough review of the administrative record, without benefit of an appeal brief on behalf of the plaintiff, reveals that there is substantial record evidence to support the decision of the ALJ. Accordingly, the Commissioner's decision should be affirmed and the Plaintiff's complaint dismissed with prejudice. A judgement incorporating these findings will be entered pursuant to *F.R.C.P. 52 and 58*.

AO72A
(Rev. 8/82)

ENTERED this 19th day of September, 2006.

      /s/Bobby E. Shepherd
     Honorable Bobby E. Shepherd
     United States Magistrate Judge

AO72A
(Rev. 8/82)